IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE ROBLES,                          )
                                      )
            Petitioner,               )        No. C 04-2529 CRB (PR)
                                      )
      vs.                             )        ORDER DENYING
                                      )        PETITION FOR A WRIT OF
J. SOLIS, Warden,                     )        HABEAS CORPUS
                                      )
            Respondent.               )
_____        )

Petitioner, a state prisoner incarcerated at the Correctional Training
Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. §
2254 challenging the California Board of Prison Terms' ("BPT") decision of May
2, 2003 finding him not suitable for parole.

Per order filed on October 22, 2004, the court found that the petition
appeared to state a cognizable due process claim under § 2254, when liberally
construed, and ordered respondent to show cause why a writ of habeas corpus
should not be granted.  Respondent filed an answer to the order to show cause
and petitioner filed a traverse.  Respondent later filed a supplemental answer, and
petitioner filed a supplemental traverse.

**BACKGROUND**

On October 24, 1990, petitioner was convicted of attempted murder in the Superior Court of the State of California in and for the County of Los Angeles and was sentenced to an indeterminate prison term of seven years to life.

Petitioner was found not suitable for parole the first four times he appeared before the BPT.  On May 2, 2003, petitioner appeared before the BPT for the fifth time.  The BPT again found him not suitable for parole.

Petitioner challenged the BPT's May 2, 2003 decision in the state superior, appellate and supreme courts.  After the Supreme Court of California denied his final state habeas petition on June 9, 2004, the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 followed.

**DISCUSSION**

A.      Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. <u>Id.</u> at 412; <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. <u>Id.</u>

B.    <u>Legal Claims</u>

Petitioner seeks federal habeas corpus relief from the BPT's May 2, 2003 decision finding him not suitable for parole, and denying him a subsequent hearing for one year, on the ground that the decision does not comport with due process. Petitioner claims that the decision was "arbitrary and capricious" and

3

not supported by the evidence.  He argues that the BPT's continued reliance on his committing offense and other unchanging factors violates due process.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime.  See Cal. Code Regs. tit. 15, § 2402(b) – (d).

The Ninth Circuit has held that the parole scheme set forth in section 3041 and accompanying regulations "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections.  McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with 15-to-life sentence implicated prisoner's liberty interest).

Respondent argues that the Ninth Circuit's holdings in McQuillon and Biggs no longer control because the Supreme Court of California since held in In re Dannenberg, 34 Cal. 4th 1061 (2005), that the language of section 3041 is not mandatory and, therefore, California inmates cannot have a liberty interest in early release on parole that is protected by federal due process.  Unfortunately for respondent, the Ninth Circuit recently rejected their no-liberty-interest argument

4

and made clear that "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass v. California Bd. of Prison Terms, No. 05-16455, slip op. 10563, 10566 (9th Cir. Aug. 31, 2006). It also held that the "some evidence" standard identified in Superintendent v. Hill, 472 U.S. 445 (1985), is clearly established federal law in the parole context for AEDPA purposes. Id. at 10572-73.

Due process requires that "some evidence" support the parole board's decision not to release the prisoner. Id. (holding that Hill, which required "some evidence" to support revocation of inmate's good-time credits, applies to decisions to deny parole reviewed in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (same). The "some evidence" standard is minimally stringent: The "Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Hill, 472 U.S. at 456 (emphasis added). The relevant question for the court is "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Id. at 455-56. The court "cannot reweigh the evidence;" it only looks "to see if 'some evidence' supports the BPT's decision." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904; Jancsek, 833 F.3d at 1390. Relevant in this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987); see also Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994) (court may consider whether a prisoner's allegations of any

5

violations by the board are of a "minor" nature, whether they are supported in fact, whether the prisoner had an opportunity to participate, and whether he took full advantage of that opportunity), rev'd on other grounds, 514 U.S. 499 (1995).

In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

Here, the record shows that on May 2, 2003, petitioner appeared with counsel before a BPT panel for a subsequent parole consideration hearing.  It was petitioner's fifth appearance before the BPT.  The presiding commissioner explained that in assessing suitability for parole the panel would consider petitioner's commitment offense, prior criminal and social history, and his programming and behavior since commitment, including progress since petitioner's last hearing, any new psychiatric reports and any other information that may have a bearing on parole suitability.  Accord Cal. Code Regs. tit. 15, § 2402(b) (setting out factors to be considered in determining suitability for parole).  The commissioner also explained that the panel had reviewed petitioner's central file and prior transcripts, that it would afford petitioner an opportunity to make corrections to the record, and that petitioner would be given an opportunity to make a final statement regarding parole suitability.

The panel then discussed with petitioner the evidence relevant to each of the factors to be considered in determining his suitability for parole, and provided him with ample opportunity to be heard on every issue.  The panel also heard final statements from a deputy district attorney and petitioner's attorney.

The panel recessed to deliberate and, after the hearing resumed, found that petitioner was "not suitable for parole" and "would pose an unreasonable risk of danger to society if released from prison at this time."  May 2, 2003 Hr'g Tr. at

51 (Resp't Ex B).  The panel explained that it had considered all relevant evidence and concluded that the factors suggesting unsuitability outweighed those suggesting suitability.

The panel found that the commitment offense was carried out in a "cruel and callous manner with a disregard for human suffering."  Id. at 52.  Petitioner and his fellow gang members brutally attacked a rival gang member in a public park and restaurant.  They hit and kicked the victim repeatedly, petitioner kicking him at least twice, before one of petitioner's fellow gang members shot the victim twice in the back, causing him serious injuries.  The panel also found that petitioner has an unstable social history and prior "criminality," including a street gang lifestyle that resulted in multiple juvenile arrests for offenses such as spraying graffitti, possession of a knife in school and stealing a car.  Id. at 52-53.  He was on probation at the time of the commitment offense.  Id. at 53.

The panel found that although petitioner has "done well while incarcerated," he recently had been cited for a 115 administrative violation for disobeying a direct order.  Id.  On December 25, 2001, during a visit from a friend, petitioner was ordered to refrain from physical contact.  He nonetheless hugged the friend and was charged with a disobeying a direct order.

The panel commended petitioner for getting his parole plans in "good order," acquiring his GED, doing "some work with college courses" and taking part in "self-help" groups.  Id. at 53, 54.  However, it made clear that in its judgment "these positive aspects of your behavior do not outweigh the factors – the factors of unsuitability." Id. at 54.  The panel encouraged petitioner to stay on the right track:  "[I]f you stay on that track, if you refrain from getting 115s, there may be a parole date in the future." Id.

7

The state courts denied petitioner's request for state habeas relief from the BPT's determination that he was not suitable for parole.

Petitioner is not entitled to federal habeas relief because the state courts' rejection of his federal claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. 28 USC § 2254(d). The BPT's May 2, 2003 decision to deny petitioner parole after his fifth parole consideration hearing is supported by some evidence in the record and that evidence bears some indicia of reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). Petitioner's disagreement with the BPT's assessment of the evidence does not compel a different result. Our inquiry here is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Hill, 474 U.S. at 455-56 (emphasis added). There is – the attempted murder offense was cruel and callous; petitioner has a prior criminal history that includes several arrests for gang-related criminal activity; and petitioner suffered a recent prison disciplinary violation. Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). It is not up to this court to "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Petitioner claims that the BPT's continued reliance on his committing offense and prior criminal history violates his due process rights. But even if petitioner's 2001 prison disciplinary violation did not in of itself constitute "some

evidence," the Ninth Circuit recently made clear that evidence of a prisoner's "prior offenses and the gravity of his convicted offense[]" may "constitute some evidence to support the [BPT's] decision." <u>Sass</u>, slip op. at 10573.  It simply cannot be said that in "making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense," the BPT acted "arbitrarily." <u>Id.</u>

The court is satisfied that the BPT gave petitioner individualized consideration and that there is "some evidence" in the record to support the panel's decision to deny petitioner parole after the May 2, 2003 subsequent hearing.  It simply cannot be said that the state courts' rejection of petitioner's challenge to the BPT's May 2, 2003 decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts.  <u>See</u> 28 U.S.C. § 2254(d); <u>Sass</u>, slip op. at 10573-74.  Petitioner is not entitled to federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  <u>October 11, 2006</u>         _____
CHARLES R. BREYER
United States District Judge